**658**

STATE of Missouri at the relation of William H. HERING and Shirley Hering, d/b/a North County Bus Service, Appellants,

v.

STATE of Missouri PUBLIC SERVICE COMMISSION, Respondent,

and

Mid American Coaches, Inc., et al., Intervenors-Respondents.

No. 28917.

Missouri Court of Appeals, Kansas City District.

April 4, 1977.

Herbert K. Hoffman, Clayton, for appellants.

Elvin S. Douglas, Jr., Harrisonville, for intervenors.

Leland B. Curtis, Gen. Counsel, W. R. England, III, Jefferson City, for respondent.

Before SHANGLER, P. J., and WELBORN and HIGGINS, Special Judges.

ROBERT R. WELBORN, Special Judge.

William H. Hering and Shirley Hering, doing business as North County Bus Service, were cited to appear before the Missouri Public Service Commission for alleged violations of § 390.051, RSMo 1969, in transporting persons in intrastate commerce without a certificate of authority issued by the Commission. Appellants responded, claiming that they were exempt from Pub-

lic Service Commission regulation because they were operating school buses within the meaning of § 390.020(16), RSMo 1969. After a hearing, the Commission found the movements involved subject to Chapter 390 and ordered appellants to desist from the questioned movements until a certificate authorizing such operation was issued. Appellants appealed to the Cole County Circuit Court, which affirmed the order of the Commission. This appeal followed.

Appellants operate school busses in and around St. Louis County. Some of their busses operated on a regular school route basis under contracts with school districts. Other busses operated by them were used, in part, for the operations which resulted in the citation to appear before the Public Service Commission. The operations involved movements from April to July, 1975 of groups of individuals of school age and included eight groups of members of the Catholic Youth Council, four groups of Camp Fire Girls, two groups of Girl Scouts and one group of Cub Scouts. The movements were sponsored by such groups and paid for from either the group treasury or by the individual organizers of the operation. The passengers were picked up at various schools, but the schools were not otherwise involved. The destination of the questioned movements included: a Girl Scout day camp, Jefferson City, Missouri, Six Flags over Mid-America, Johnson's Shut-Ins, Osage Beach, Missouri, Lincoln's Home and Tomb, Springfield, Illinois, the New Cathedral in St. Louis, the Riverboat Admiral at St. Louis, Forest Park Community College, Springdale Park and Holiday Village.

Appellants defended their failure to procure a certificate from the Commission for such operations on the grounds that § 390.-030 1. (2), RSMo Supp.1975, exempts "school busses" from the so-called "Bus and Truck" law and that their vehicles and their operation were within the definition of "school bus" in § 390.020(16), RSMo 1969, as follows:

"The term 'school bus' means any motor vehicle while being used solely to transport students to or from school or to transport students to or from any place for educational purposes."

Appellants offered evidence of the broad general educational purposes of the various sponsoring organizations and urged that any movement of school-age children had an educational effect.

The Commission, in its report and order, adopted the following criteria for the purpose of applying the definition found in § 390.020(16):

"(1) To qualify as a student the individual must be formally enrolled in preschool, elementary, high school, junior college, college or university, technical or trade school, and

"(2) The movement must be expressly approved by the school board or other governing body of the school authorizing the movement." Applying such criteria, the Commission found that the movements did not involve school busses within the exemption granted under § 390.030 1. (2), and ordered appellants to desist from such movements without a certificate from the Commission.

The Cole County Circuit Court upheld the order on appeal.

In this court, appellants contend that the criteria adopted by the Commission for application of the school bus exemption restrict the legislative definition of school busses and that such restriction is beyond the authority of the Commission. Appellants also contend that the order of the Commission is based upon matters not part of the record in this case because the Commission found that policy considerations, including safety and insurance requirements, provided a basis for the criteria adopted by the Commission, and no evidence was presented on such matters.

In *State ex rel. Anderson, et al., v. Witthaus*, 340 Mo. 1004, 102 S.W.2d 99 (banc 1937), the court held that operation of a charter bus service, engaged in the transportation under contract of members of groups or organizations for a lump sum,

was an operation of a common carrier for hire, subject to the Bus and Truck Law. The school bus exemption was not considered in that case. Such exemption had been provided by Laws of Mo., 1931, p. 304, § 5265. That enactment exempted " * * any motor vehicle owned, controlled or operated as a school bus, * * *." The term "school bus" was first defined in Laws of 1941, p. 522, as follows:

"The term 'school bus,' when used in this article, means any motor vehicle used to transport students to and from school (either public or private) or to transport pupils properly chaperoned, to and from any place within the state, for educational purposes."

In Laws of 1951, p. 547, the present definition of the term "school bus" was enacted, as well as the present exemption applicable thereto. § 390.030 1. (2).

(In 1951, legislation pertaining to the licensing of school bus drivers and providing for a $25.00 registration fee for school busses was also adopted. In the driver's license law, the term "school bus" was defined in the same language as the original definition in the Bus and Truck Law. That definition is still employed in § 302.-010(15), RSMo 1969. Laws of Mo.1951, p. 678, § 302.010(17), p. 681. The definition for purpose of the registration and licensing statutes of "school bus" was practically the same as that found in the 1951 amendment to the Bus and Truck Act. Laws of Mo. 1951, p. 695, § 301.010(22), p. 697. That definition is still found in § 301.010(25), RSMo 1969, as amended by Laws of 1974, p. 875.)

Appellants argue that the change in the language of "pupils properly chaperoned" to "students" is significant because the latter "is a more general reference to those individuals who are not employed on a full time basis in some endeavor and who have not completed their education" whereas the latter refers to persons "presently attending school" who have someone from that school to chaperone them.

■ Dictionary definitions of the words "student" and "pupil" do not support the argument that in employing the terms the legislature intended to enlarge the class of persons who might be transported without a Public Service Commission certificate. The following applicable definitions are found in Webster's Third New International Dictionary (unabridged) (1961): "pupil * * * 2: a child or young person in school or in charge of a tutor or instructor: STUDENT 1 * * * "student * * * 1: a person engaged in study: one devoted to learning as a: one enrolled in a class or course in a school, college or university: PUPIL b: one who independently carries on a systematic study or detailed observation of a subject * * *."

In view of the use of the term "student" with the phrase "going to and from school" the legislature must have used the term, in the first phrase of the definition in the sense of "one enrolled in a class etc.," which usage is synonymous with the term "pupil." " * * * [W]here the same word or phrase is used more than once in the same act in relation to the same subject matter and looking to the same general purpose, if in one connection its meaning is clear and in another it is doubtful or obscure, it is given the same construction in the latter case as in the former." 73 Am.Jur.2d Statutes § 232, pp. 415–416 (1974). Such definition is also consistent with the object of the definition, "*school* busses." To ascribe such meaning to the term in the second phrase does not make the 1951 amendment meaningless. Certainly the element of "proper chaperonage," a somewhat subjective element, difficult of application, was eliminated.

■ The requirement of school sanction for the movement is not unreasonable or inconsistent with the terms of the statute. It provides an objective measure of the purpose of a trip.

■ The construction of the statute applied in this case is consistent with its prior construction by the Commission. In the case of *Washington–Union–St. Louis Bus Co. v. Straatmann,* 7 Mo.P.S.C.(N.S.) 388 (1957), the Commission found that transportation of a Girl Scout group from Washington, Missouri, to St. Louis, on a Saturday

for a movie was not within the school bus exemption, relied upon by the bus operator. The construction of a statute by the agency charged with its enforcement is entitled to some weight in the interpretation of the statute. 73 Am.Jur.2d § 168, p. 371 (1974).

■ Appellants' contention that the Commission's order is based on evidence not contained in the record is without merit. In arriving at its conclusion, the Commission did consider the object of the statute in arriving at its construction. The Commission noted that passengers transported by common carriers receive the benefit of safety and other protective measures, such as insurance, by reason of the Bus and Truck Law and Commission regulations thereunder and that school bus operations under school auspices receive the benefit of the supervision and protection of the control of the controlling school authority. The inference from the Commission's reasoning was that, if the movements such as here involved were within the school bus exemption, they would nevertheless lack the benefit of the protection ordinarily afforded school bus passengers. Such reasoning was merely cited as an additional support for the Commission's conclusion because it showed that such conclusion was consistent with the object of the legislation.

Judgment affirmed.